Elizabeth STROM *v.* STATE of Arkansas

CR 01-933                                        74 S.W.3d 233

Supreme Court of Arkansas
Opinion delivered May 16, 2002

*Wilson & Associates, P.L.L.C.*, by: *Patrick J. Benca*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

TOM GLAZE, Justice. On February 15, 2000, a Pulaski County jury convicted appellant Elizabeth Strom of manufacturing a controlled substance and possession of drug paraphernalia and sentenced her to a total of fifteen years in prison. The judgment and commitment order was entered on February 28, 2000, and Strom filed a *pro se* petition for postconviction relief

on May 10, 2000. The trial court denied that petition on July 20, 2000.

On April 12, 2001, Strom filed a motion to vacate or set aside her conviction and sentence pursuant to Ark. R. Crim. P. 37; in this motion, she alleged, among other things, that her trial attorney, Stuart Vess, refused to file an appeal from her February 2000 conviction and sentence.[1] On August 28, 2001, Strom filed her motion for belated appeal in this court, in which she argued that she should be entitled to an appeal because Vess did not file a notice of appeal after her conviction in February of 2000. In an affidavit attached to the motion for belated appeal, Strom averred that she told Vess that she wanted him to file a notice of appeal on her behalf, but Vess refused to file a notice of appeal because he believed it to be futile and because Strom could not afford his fee for representation on appeal.

In a *per curiam* order issued on September 27, 2001, this court remanded the matter to the trial court for a hearing to settle the record in order to determine whether Strom had requested Vess to file a notice of appeal and whether Vess had complied with Ark. R. App. P.—Crim. 16. *Strom v. State*, 346 Ark. 160, 55 S.W.3d 297 (2001). After a hearing on October 24, 2001, the trial court entered an order concluding that Strom did not inform Vess of her desire to appeal, and that Vess complied with Rule 16.

After the trial court entered that order, Strom filed a motion with this court to set aside the trial court's findings on October 26, 2001; we denied the motion on November 15, 2001. On November 16, 2001, Strom filed a notice of appeal from the trial court's October 24 order. Strom then resubmitted her motion to file a belated appeal on February 13, 2002; the motion was denied on February 21, 2002. On March 7, 2002, Strom filed a motion for clarification, asking our court to explain why it agreed with the trial court that Vess had fully complied with Rule 16. This time, the court granted the motion and set a briefing schedule. Strom filed her brief on March 28, 2002, and on appeal, she

---

[1] The partial transcript that accompanied Strom's subsequent motion for belated appeal did not reflect that any further action was taken on that motion.

argues that the trial court erred in concluding that Vess complied with Rule 16.

■ ■ When a case is remanded to the trial court for a factual determination regarding a motion for belated appeal, and the merits of that motion rest on the credibility of the witnesses, this court recognizes that it is the lower court's task to assess the credibility of the witnesses. *See Frazier v. State,* 339 Ark. 173, 3 S.W.3d 334 (2001). This court, however, does not attempt to weigh the evidence or assess the credibility of the witnesses; that lies within the province of the trier of fact. *Harmon v. State,* 340 Ark. 18, 8 S.W.3d 472 (2000). We are bound by the fact-finder's determination on the credibility of witnesses. *Id.* Likewise, we have long held that the trier of fact is free to believe all or part of a witness's testimony. *Id.* We do not reverse a trial court's findings of fact unless they are clearly erroneous. *See, e.g., Womack v. Foster,* 340 Ark. 124, 8 S.W.3d 854 (2000); *Shibley v. State,* 324 Ark. 212, 920 S.W.2d 10 (1996); Ark. R. Civ. P. 52(a).

■ ■ Rule 16 of the Arkansas Rules of Appellate Procedure—Criminal provides, in pertinent part, the following:

> Trial counsel, whether retained or court appointed, *shall* continue to represent a convicted defendant throughout any appeal to the Arkansas Supreme Court, unless permitted by the trial court or the Arkansas Supreme Court to withdraw in the interest of justice or for other sufficient cause.

(Emphasis added.) This court has held, however, that a defendant may waive the right to appeal by his or her failure to inform counsel of the desire to appeal within the thirty days allowed for filing a timely notice of appeal under Rule 4(a) of the Rules of Appellate Procedure. *Langston v. State,* 341 Ark. 739, 19 S.W.2d 619 (2000); *Sanders v. State,* 330 Ark. 851, 956 S.W.2d 868 (1997); *Jones v. State,* 294 Ark. 659, 748 S.W.2d 117 (1988).

At the October 24 hearing, Vess testified that Strom informed him that she did not wish to appeal her February 2000 conviction; rather, she said she wanted to try to get the other charges that she had, including a revocation of probation, to run concurrent to the February conviction. Vess commented that Strom received a sentence that was less than the one the prosecu-

tor had offered her, and she seemed relieved about it. Vess further stated that he talked with Strom over the phone about another charge that was coming up on April 3, 2000, and she did not mention at that time that she wanted to appeal the February conviction. She indicated during that conversation that she wanted the April 3 charges run concurrently to the other time she was already serving. Strom pled guilty to the charges on April 3, and her penitentiary time was run concurrently to the other time; at the time, Vess testified that she never mentioned that she wanted to appeal the earlier case.

Vess also noted that he had sent Strom a letter about the April 3 charges, and confirmed their conversation wherein she said that she did not want to appeal. The letter read as follows:

> *As per our telephone conversation, we will not be appealing your jury trial conviction.* As I talked to you, the prosecutor is agreeable to running the charges in Seventh Division Circuit concurrent with the sentence you received in the jury trial. Also with regard to your theft charge, the prosecutor will be nol prossing that. I'll see you on April 3rd at 2 o'clock to do your guilty plea for concurrent time. Good luck to you, Stuart Vess. [Emphasis added.]

After Strom's appearance on April 3, when she pled guilty and received concurrent time, the next time Vess heard from Strom was after the court of appeals reversed the conviction of her husband and co-defendant in case number 99-3836, Mike Porter. Porter's case was reversed and dismissed on January 24, 2001. *Porter v. State*, CACR00-627 (Ark. App. Jan. 24, 2001). Porter called Vess about Strom after Porter's conviction was reversed, and at that time, Vess told Porter that it was too late, but Vess said that if Porter could get authorization from Strom for Vess to release her file, he would do so. Porter got Strom's authorization, and Vess released her file to him. The last time Vess had contact with Strom, however, was on April 3, 2000.

When asked about an allegation in Strom's affidavit that Vess refused to file her appeal because he believed it to be futile and because she could not afford his fee on appeal, Vess replied that he had never quoted her a fee, and that her allegations were not true. He stated that he did not file an appeal in her case because he did

not think she would win on appeal, and he advised her of that. He also advised her that he thought they could get the charges run concurrently, and when he asked her if she wanted to do that, she said, "yes."

Strom also testified at the hearing, and contradicted most of what Vess had stated. However, she did concede that Vess's letter, in which he stated that they would not be appealing her conviction "confirmed [her] conversation with him." At the end of the hearing, the trial court opined that Strom did not tell Vess that she wanted to appeal, and that the issue of her appeal never came up until after Porter's case had been reversed. The judge stated that he "just simply [didn't] believe this lady. . . . I believe Mr. Vess and based upon that, I don't think Mr. Vess had a duty to withdraw; I don't think he had a duty to do anything other than what he did[.]"

Strom acknowledges that the trial court, as fact-finder, makes credibility determinations. *See Harmon v. State*, 340 Ark. 18, 8 S.W.3d 472 (2000). However, citing *Lewis v. State*, 279 Ark. 143, 649 S.W.2d 188 (1983), Strom argues that her trial counsel, Vess, failed to advise her of her right to appointed counsel on appeal. In *Lewis*, this court held that, where counsel knew his client wanted to appeal but failed to take action to see that his client understood that an indigent could ask the trial court to appoint an attorney to perfect the appeal at public expense, counsel was obligated to file a notice of appeal or obtain permission from the trial court to withdraw.

In the present case, as opposed to *Lewis*, Vess testified that it was his understanding, based on his conversations with Strom, that she did not want to appeal. The trial court believed Vess's testimony to this effect, and the court's conclusion is adequately supported by the transcript of those proceedings. Although there was conflicting testimony, the trial court concluded that Vess was credible and Strom was not. This court defers to the trial court's superior position to ascertain witnesses' credibility, *see Frazier, supra*, and the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Atkinson v. State*,

347 Ark. 336, 64 S.W.3d 259 (2002); *Phillips v. State*, 344 Ark. 453, 40 S.W.3d 778 (2001).

█ Further, in *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the United States Supreme Court rejected the notion of a bright-line rule requiring trial counsel to "always consult with the defendant regarding an appeal"; rather, the Court held that it would apply the standard of *Strickland v. Washington*, 466 U.S. 688 (1984), to determine whether or not counsel rendered a deficient performance with respect to filing a notice of appeal. In other words, the Court stated that counsel's performance would be judged by determining whether or not the representation fell below an objective standard of reasonableness, and whether or not the performance prejudiced the defendant. *Flores-Ortega*, 528 U.S. at 477. The Court expanded on this notion as follows:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning — advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. [Citation omitted.]

*Id.* at 478.

█ From Vess's testimony at the October hearing, it is clear that the trial court believed that Vess had sufficiently consulted with Strom about her appeal and about the remainder of the proceedings against her. The question, as framed in *Flores-Ortega*, is whether or not "counsel ma[d]e objectively reasonable choices." *Id.* at 479. Here, given Strom's indication to Vess that she wanted to plead guilty to the other charges against her, and Vess's credible testimony that she never mentioned that she wanted to appeal the February 2000 conviction, we agree with the

trial court that Vess acted reasonably under the circumstances and did not render ineffective assistance of counsel.

■ We note that the State has raised two procedural arguments against Strom's appeal. First, citing *Camargo v. State*, 337 Ark. 105, 987 S.W.2d 680 (2000), the State asserts that law of the case bars this appeal, because this court has twice rejected her petition for a belated appeal. In *Camargo*, we held that the law-of-the-case doctrine prevents an issue that was raised in a prior appellate proceeding from being raised in a subsequent appellate proceeding "unless the evidence materially varies between the two[.]" Here, though, the "subsequent" proceedings — our present review of the trial court's factual findings — differ from the prior appellate proceedings, because this is the first time we have had the opportunity to examine the determinations of facts made by the trial court following our remand.

■ Additionally, the State contends that there is no final, appealable order from the circuit court. However, as just noted, the trial court made findings upon directions from this court, so that we could consider and review an unresolved factual question. The State attempts to analogize this court's current remand to the appointment of a special master to make findings of fact, but this analogy only supports the conclusion that there is an appealable order. When this court appoints a master, he or she enters findings of fact, and this court then reviews them, rejecting any findings that are clearly erroneous, and renders a decision. *See, e.g., Osborne v. Powers*, 322 Ark. 229, 908 S.W.2d 340 (1995). This is precisely what we are asked to do in this matter, and we conclude that the trial court's findings were not clearly erroneous.

We affirm the trial court and deny Strom's motion for belated appeal.

IMBER, J., not participating.